**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN TREMATORE PLUMBING & HEATING, INC., | |
| Plaintiff, | |
| v. | Case No. 2:21-cv-05285 (BRM) (AME) |
| SHEET METAL WORKERS LOCAL UNION 25, SMART, | **OPINION** |
| Defendant-Counterclaimant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are two motions. The first is Plaintiff Brian Trematore Plumbing & Heating, Inc.'s ("Trematore") Motion for Judgment on a Stipulated Record.[1] (ECF No. 61; Trematore's Am. Mot. Br. (ECF No. 67-1)). Defendant-Counterclaimant Sheet Metal Workers Local Union 25, SMART ("Local 25") filed an opposition (ECF No. 69), and Trematore filed a reply (ECF No. 71). The second is Local 25's Cross-Motion for Judgment on a Stipulated Record.[2]

---

[1] Trematore filed its motion as a Motion for Judgment on the Pleadings, however, Trematore entitled its original, supporting brief as "Brief in Support of Plaintiff Brian Trematore Plumbing and Heating, Inc.'s Motion for Judgment on a Stipulated Record." (Trematore's Mot. Br. (ECF No. 61).) Additionally, the parties: filed a Joint Statement of Undisputed Facts outside of the pleadings (ECF Nos. 50-1, 58-1); sought the Honorable John Michael Vazquez, U.S.D.J.'s permission to file "cross motions based on [the] stipulated record"; and noted "there is no federal rule on point for such motions, [thus] we propose characterizing this procedure as 'Cross-Motions for Judgment on a Written Record.'" (ECF No. 50 at 2). Therefore, the Court construes the motion as a Motion for Judgment on a Stipulated Record.

[2] Similarly, Local 25 filed its cross-motion as a Cross-Motion for Judgment on the Pleadings and entitled its brief as "Local 25's Brief in Support of Cross-Motion for Judgment on a Written Record." (Local 25's Mot. Br. (ECF No. 62-1).) Based on the reasoning detailed in footnote 1, the Court construes the cross-motion as a Cross-Motion for Judgment on a Stipulated Record.

(ECF No. 62.) Tremature filed an opposition (ECF No. 68), and Local 25 filed a reply (ECF No. 70). Local 25 subsequently filed a sur-reply in further support of the Cross-Motion for Judgment on a Stipulated Record. (ECF No. 73.) Tremature filed a letter brief in further opposition to Local 25's sur-reply and cross-motion. (ECF No. 75.) Having reviewed the parties' submissions filed in connection with the motion and cross-motion, and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Tremature's Motion for Judgment on a Stipulated Record (ECF No. 61; ECF No. 67-1) is **DENIED** and Local 25's Cross-Motion for Judgment on a Stipulated Record (ECF No. 62) is **GRANTED**.

## I.   BACKGROUND

### A.   Factual Background

This matter concerns a dispute between an employer, Tremature, and a union, Local 25, as to whether Tremature is or was bound to certain collective bargaining agreements. (ECF No. 50 at 1.) Tremature is a New Jersey corporation engaged in the industries of plumbing, heating, as well as heating, ventilation, and air conditioning ("HVAC") construction. (Amended Joint Statement of Undisputed Facts (ECF No. 58-1) ¶ 1.) Tremature qualifies as an "employer" within the definition provided by § 2(2) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 152(2), and is involved in "commerce" and in an industry "affecting commerce" within the definitions provided by §§ 2(6), (7) of the NLRA, 29 U.S.C. §§ 152(6), (7). (*Id.* ¶ 2.) Local 25 is an unincorporated association qualifying as a "labor organization" within the definition of § 2(5) of the NLRA, 29 U.S.C. § 152(5). (*Id.* ¶¶ 4–5.)

#### 1.   The High-Tech High School Project

In or about April 2017, Tremature was awarded a contract to perform plumbing and HVAC

construction[3] for the High-Tech High School in Secaucus, New Jersey (the "High-Tech High School Project"). (*Id.* ¶ 10.) As a condition of performing any work at the High-Tech High School Project, Trematore was required to execute a Project Labor Agreement.[4] (*Id.* ¶ 11.) Under Article 4 of the Project Labor Agreement entitled "Union Recognition and Employment," Trematore was obligated to recognize Local 25 as the exclusive bargaining representative for all sheet metal workers who were performing sheet metal fabrication and installation of HVAC construction. (*Id.* ¶ 13; Amended Master List of Exhibits, Ex. A, Project Labor Agreement (ECF No. 58-3 at 8).) On April 11, 2017, Trematore signed the June 1, 2015 to May 31, 2018 Standard Form of Union Agreement with Local 25 ("April 11, 2017 CBA") with the notation, "[t]his agreement is for the Hudson County High Tech High School only!". (ECF No. 58-1 ¶ 14; Amended Master List of Exhibits, Ex. B, Standard Form of Union Agreement (ECF No. 58-3 at 64).)

Due to difficulty in securing bids from HVAC contractors unionized with Local 25, Trematore initially had HVAC sheet metal work performed by its unionized plumber employees represented by the Plumbers Union. (ECF No. 58-1 ¶¶ 16–17.) Local 25 filed a grievance asserting work should be done by its members instead. (*Id.* ¶ 19.) As a result, Trematore began employing Local 25 members to perform the sheet metal fabrication and installation HVAC work for the High-Tech High School Project. (*Id.* ¶ 20.) Thereafter, Local 25 initiated a second grievance because Local 25 members reported Trematore had contracted for twelve non-union sheet metal

---

[3] HVAC construction can be divided into two different construction systems. The relevant system to this matter, Air HVAC, involves the fabrication and installation of sheet metal duct work for heating and cooling systems. Local 25's contract jurisdiction includes sheet metal drafting, fabrication, and installation of sheet metal duct work for Air HVAC construction. (*Id*. ¶ 12.)

[4] Project labor agreements are signed by all contractors, subcontractors, and unions on a project to provide labor peace and efficient construction by ensuring that only unionized construction workers are employed on a project. (*Id*. ¶ 11.)

workers who worked on the High-Tech High School Project allegedly in violation of the April 11, 2017 CBA. (*Id.* ¶¶ 21–22.) Local 25 and Tremore eventually entered into an oral agreement which resolved the second grievance and a related Unfair Labor Practice Charge. (*Id.* ¶ 28.)

### 2.    The 2015/2018 and 2018/2021 Collective Bargaining Agreements

Pursuant to the oral agreement, on May 23, 2018, Tremore executed another Standard Form of Union Agreement and a Local 25 Addendum covering the period of June 1, 2015 to May 31, 2018 (the "2015/2018 CBA").[5] (*Id.* ¶¶ 45–46; Amended Master List of Exhibits, Ex. Q, 2015/2018 Standard Form of Union Agreement and Addendum (ECF No. 58-3 at 149–90).) Article XVII, Section 1 of the 2015/2018 CBA (the "Evergreen Provision")[6], addressed the issue of how a successor collective bargaining agreement was to be formed, either by negotiation or interest arbitration and also stated the existing contract shall remain in effect until modified by agreement or interest arbitration. (ECF No. 58-1 ¶¶ 56–57; ECF No. 58-3 at 161.) The Evergreen Provision states:

> This Agreement . . . shall become effective on the FIRST day of JUNE, 2015 and remain in full force and effect until the THIRTY-FIRST day of MAY, 2018 and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party by written notice, provided, however, that, if this Agreement contains Article X, Section 8, it shall continue in full

---

[5] The 2015/2018 CBA was different from the April 11, 2017 CBA because the 2015/2018 CBA recognized Local 25's exclusive jurisdiction, pursuant to § 9(a) of the NLRA, 29 U.S.C. § 159(a), over all construction sites at which Tremore would be performing sheet metal work both inside and outside of Local 25's geographic jurisdiction whereas the April 11, 2017 CBA was limited to the site of the High-Tech High School Project. (*Id*. ¶ 52.)

[6] An "evergreen provision" is a provision in a collective bargaining agreement which extends the parties' rights, benefits, obligations, responsibilities, and remedies under the collective bargaining agreement beyond the expiration date, until the parties complete negotiations for a new, successor collective bargaining agreement. (ECF No. 58-1 ¶ 73.)

> force and effect until modified by order of the National Joint
> Adjustment Board or until the procedures under Article X, Section
> 8 have been otherwise completed.

(ECF No. 58-3 at 161.) Article X, Section 8 of the 2015/2018 CBA provides for binding interest arbitration of a successor agreement if direct negotiations between the parties fail. (ECF No. 58-1 ¶ 55; ECF No. 58-3 at 157–58.)

Tremartore did not sign a Standard Form of Union Agreement or collective bargaining agreement for the period of June 1, 2018 to May 31, 2021 (the "2018/2021 CBA"). (ECF No. 58-1 ¶ 50.) Tremartore did not seek to independently negotiate or engage in binding interest arbitration with Local 25 for a successor collective bargaining agreement following the expiration of the 2015/2018 CBA. (*Id.* ¶ 59.) Additionally, Tremartore did not provide a "written notice of reopening" to Local 25 to negotiate for a successor 2018/2021 collective bargaining agreement.[7] (*Id.* ¶ 60).

Notably, Article XVII, Section 4 of the 2015/2018 CBA waives an employer's right to repudiate the 2015/2018 CBA during its term, or during the term of any extension modification or amendment. (*Id.* ¶ 63; ECF No. 58-3 at 161.) The Sheet Metal and Air Conditioning Contractors' National Association of Northern New Jersey ("SMACNA-NNJ") negotiated a standard form collective bargaining agreement with Local 25 for all employer members. (ECF No. 58-1 ¶ 65.) Tremartore was not a party to the negotiations between SMACNA-NNJ and Local 25 because it was not a member of SMACNA-NNJ. (*Id.* ¶ 66.)

Tremartore continued to directly employ Local 25 sheet metal workers until September 9,

---

[7] Pursuant to Article XVII, Section 1, of the 2015/2018 CBA, a "written notice of reopening" is a means of opening negotiations for a successor CBA through interest arbitration procedures provided by the National Joint Adjustment Board of the Sheet Metal Workers Union. (*Id.* ¶ 61.)

2018.[8] (*Id.* ¶ 67.) During the period of June 1, 2018 through September 9, 2018, Trematore abided

by the wage and benefit increases of the 2018/2021 CBA, which were above those provided by

the 2015/2018 CBA. (*Id.* ¶ 68.) Trematore has not employed any Local 25 members on its direct

payroll since September 9, 2018. (*Id.* ¶ 69.)

### 3.     Dispute Over the 2018/2021 CBA

On May 9, 2019, Local 25 sent a letter to Trematore enclosing a printed copy of the

successor 2018/2021 CBA. (*Id.* ¶ 70.) On May 22, 2019, Trematore's counsel sent a letter to Local

25's counsel stating Trematore would not be signing the 2018/2021 CBA because "Trematore has

made a managerial decision that it will no longer bid for any work at any construction site which

is within the work jurisdiction provisions of Local 25's Collective Bargaining Agreement." (ECF

No. 58-1 ¶ 71; Amended Master List of Exhibits, Ex. U, May 22, 2019 Letter (ECF No. 58-3 at

294).) On May 28, 2019, Local 25's counsel sent an email to Trematore's counsel asserting the

2015/2018 CBA had an "evergreen provision" citing to Article XVII, Section 1 therefore

Trematore was bound by the 2018/2021 CBA even though Trematore had not signed it. (ECF No.

58-1 ¶ 72; Amended Master List of Exhibits, Ex. V, May 28, 2019 Email (ECF No. 58-4 at 2).)

### 4.     The Vassar Brothers Medical Center Project

On January 13, 2017, Trematore was subcontracted to provide plumbing and pipefitting

work at the Vassar Brothers Medical Center Hospital in Poughkeepsie, New York (the "Vassar

Brothers Medical Center Project").[9] (ECF No. 58-1 ¶ 85.) Trematore did not employ sheet metal

---

[8] September 9, 2018 was the last date on which Trematore had any Local 25 members on its direct payroll. (*Id.* ¶ 69.)

[9] The Vassar Brothers Medical Center Project was outside the jurisdiction of Local 25 but within the jurisdiction of Sheet Metal Workers Local Union 38 ("Local 38"). (ECF No. 58-1 ¶ 86.)

workers for this project, but rather signed a collective bargaining agreement with the Plumbers and Pipefitters Union No. 21 and hired its unionized pipefitters and plumbers to perform the subcontracted work. (*Id.* ¶ 88.) Trematore's unionized plumbers fabricated and installed "drip pans" as part of the Vassar Brothers Medical Center Project.[10] (*Id.* ¶¶ 89–92.)

### a.      The Vassar Grievance

On May 13, 2019, Tremnatore was served with a grievance (the "Vassar Grievance") initiated by Sheet Metal Workers Local Union 38 ("Local 38"). (*Id.* ¶ 96; Amended Master List of Exhibits, Ex. AA, the Vassar Grievance (ECF No. 58-6 at 93.) In support of the Vassar Grievance, Local 38 contended the "drip pan" fabrication and installation performed by Tremnatore in May 2019 constituted sheet metal work that should have been performed by workers represented by Local 38. (ECF No. 58-1 ¶ 98.) Local 38's claim was based on the language of Tremnatore's 2015/2018 CBA with Local 25 which applies to all jurisdictions where Tremnatore performed sheet metal work. (*Id.* ¶ 99.) Local 38's Joint Adjustment Board heard the Vassar Grievance at a proceeding on June 6, 2019. (*Id.* ¶¶ 100, 104.) At the Vassar Grievance proceeding, Tremnatore's counsel agreed that Tremnatore was a signatory to a collective bargaining agreement with Local 25. (*Id.* ¶ 104.) Further, in a letter to Local 38 dated May 22, 2019, which was admitted into evidence at the Vassar Grievance proceeding, Tremnatore's counsel wrote "my understanding is that Tremnatore has been a party to several Collective Bargaining Agreements with Local 25" but then argued "that these agreements are strictly limited to [Local 25] and do not include the International." Additionally, Tremnatore's counsel stated "the [Collective Bargaining] Agreements are limited to the geographic jurisdiction of Local 25 which is limited to a number of counties in

---

[10] For the Vassar Brothers Medical Center Project, the drip pan was a metal pan fabricated from sheet metal with pitched kinks to direct the liquid to a drain. (*Id.* ¶ 94.)

northern New Jersey." (*Id.* ¶ 105; Amended Master List of Exhibits, Ex. BB, May 22, 2019 Letter (ECF No. 58-6 at 11).)

Ultimately, Local 38's Joint Adjustment Board found Local 38 had established the "drip pan" work performed by Trematore was sheet metal covered under the 2015/2018 CBA with Local 25 therefore the work should have been performed by Local 38's sheet metal workers and not members of the Plumbers and Pipefitters Union No. 21. (ECF No. 58-3 ¶ 112.) As a result of this finding, Trematore was fined $20,962.20, but eventually settled the matter for $18,000. (*Id.* ¶¶ 113–15.)

### 5.     The Felician University Project

On March 13, 2020, Trematore was subcontracted by Del-Sano Contracting Corporation to perform plumbing and HVAC work at the Felician University Wellness and Recreation Center in Rutherford, New Jersey (the "Felician University Project"). (*Id.* ¶ 120.) The Felician University Project was within the jurisdiction of Local 25 and required HVAC work which included sheet metal work. (*Id.* ¶¶ 121–22.) Trematore decided to subcontract the HVAC work. (*Id.* ¶ 123.) On May 6, 2020, Trematore sent a Letter of Intent to BMP Mechanical ("BMP"), which stated Trematore was engaging BMP to perform the HVAC portion of work for the Felician University Project.[11] (*Id.* ¶ 125; Amended Master List of Exhibits, Ex. FF, May 6, 2020 Letter of Intent (ECF No. 58-6 at 93).) On January 20, 2021, BMP began to perform the HVAC work at the Felician University Project. (ECF No. 58-1 ¶ 128.)

### a.     The Felician University Grievance

On February 16, 2021, Trematore was served with a grievance by Local 25 (the "Felician University Grievance"). (*Id.* ¶ 129; Amended Master List of Exhibits, Ex. GG, the Felician

---

[11] BMP is not a unionized contract and employs non-union sheet metal workers. (*Id.* ¶ 126.)

University Grievance (ECF No. 58-6 at 95).) The Felician University Grievance alleged Trematore violated the "no subcontracting clause" of the 2018/2021 CBA with BMP, a non-union employer which was not a signatory to the 2018/2021 CBA. (ECF No. 58-1 ¶¶ 131–36.) Local 25's Joint Adjustment Board denied Trematore's request to delay the consideration of the Felician University Grievance until after the instant litigation was completed. (ECF No. 58-1 ¶ 144.) On May 21, 2021, Local 25's Joint Adjustment Board rendered a unanimous decision finding Trematore violated the 2018/2021 CBA.[12] (*Id.* ¶ 146; Amended Master List of Exhibits, Ex. II, the Felician University Grievance Decision (ECF No. 58-6 at 103).)

### 6.     Local 25 Demands Negotiations of a 2021/2024 CBA

On February 24, 2021, Local 25 sent a letter to Trematore stating its desire to negotiate the terms and conditions of a new, subsequent collective bargaining agreement for 2021 to 2024 ("2021/2024 CBA"). (ECF No. 58-1 ¶ 148; Amended Master List of Exhibits, Ex. JJ, February 24, 2021 Letter (ECF No. 58-6 at 105).) By email correspondence, Trematore responded by asserting it no longer had an obligation to bargain with Local 25 because it was not bound by a collective bargaining agreement. (ECF No. 58-1 ¶ 149.) Thereafter, Local 25 responded by stating Trematore is bound to the 2018/2021 CBA because of the Evergreen Provision of the 2015/2018 CBA. (*Id.*) On March 15, 2021, Trematore filed the Verified Complaint in this lawsuit. (ECF No. 1.)

### 7.     Unfair Labor Practice Charge and the NLRB Region 22 Complaint

On March 19, 2021, Local 25 filed an Unfair Labor Practice Charge with the National Labor Relations Board (the "NLRB") alleging Trematore violated the NLRA by refusing to negotiate a successor collective bargaining agreement. (ECF No. 58-1 ¶ 152; Amended Master

---

[12] The parties agreed to bifurcate liability from damages, with the damages portion of the Felician University Grievance to be determined at a future date. (*Id.* ¶ 147.)

List of Exhibits, Ex. HH, Unfair Labor Practice Charge (ECF No. 58-6 at 98–101).) On March 3, 2023, NLRB Region 22 issued a Complaint and Notice of Hearing against Trematore based on Local 25's March 19, 2021 Unfair Labor Practice Charge (the "NLRB Region 22 Complaint"). (ECF No. 58-1 ¶ 152; Amended Master List of Exhibits, Ex. KK, NLRB Region 22 Complaint (ECF No. 58-6 at 107–18).)

On January 10, 2024, the Honorable Kenneth W. Chu, A.L.J. issued a decision in Brian Trematore Plumbing and Heating and Sheet Metal, Air, Rail and Transportation (SMART), Local 25, AFL-CIO, Case No. 22-CA-274372 (the "NLRB Decision"). (ECF No. 73-1.) The parties submitted a "virtually identical stipulated record" for Judge Chu's review. (ECF No. 73 at 2.) In the NLRB Decision, Judge Chu noted the difference between § 8(f) and § 9(a) agreements and declined to apply the "One-Employee Unit Rule."[13] (ECF No. 73-1 at 34–36.) Judge Chu held Trematore "violated Section 8(a)(5) and (1) of the Act by failing and refusing to bargain in good faith and failing to continue in effect all the terms and conditions of the parties' 2015/2018 collective bargaining agreement by subcontracting bargaining unit work." (ECF No. 73-1 at 36.) Additionally, Judge Chu found Trematore's actions, after executing the 2015/2018 CBA on May 23, 2018, violated § 8(a)(5) and § 8(a)(1) by refusing to meet and bargain for a successor agreement. (*Id*. at 38.)

### B.    Procedural History

On March 15, 2021, Trematore filed a Verified Complaint asserting two claims against

---

[13] *See infra* Section III.B. The One-Employee Unit Rule is referred interchangeably as the "One-Man Unit Rule" in judicial opinions. Throughout this Opinion, the Court will utilize the terminology—One-Employee Unit Rule as used by the Sixth and Ninth Circuit. *See e.g.*, *Laborers Health & Welfare Tr. Fund for N. California v. Westlake Dev.*, 53 F.3d 979 (9th Cir. 1995); *Baker Concrete Const., Inc. v. Reinforced Concrete Contractors Ass'n*, 820 F.3d 827 (6th Cir. 2016).

Local 25: (1) declaratory judgment to enjoin the arbitration of the Felician University Grievance (Count One); (2) declaratory judgment to enjoin negotiations for the successor collective bargaining agreement (Count Two). (ECF No. 1.)

On April 14, 2021, Local 25 filed a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 4.) On April 16, 2021, Local 25 filed an Amended Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 5.) On May 11, 2021, Trematore filed an opposition. (ECF No. 8.) On May 24, 2021, Local 25 filed a reply. (ECF No. 9.) On November 17, 2021, Judge Vazquez issued an Opinion and Order denying Local 25's Amended Motion to Dismiss. (ECF No. 21.) Judge Vazquez found this Court had subject matter jurisdiction because § 301 of the NLRA, 29 U.S.C. § 185 "confers jurisdiction on a district court to determine the existence of a collective bargaining agreement." (ECF No. 21 at 4 (quoting *Util. Workers United Ass'n, Loc. 537 by Booth v. Pa. Am. Water Co*., 838 F. App'x 686, 688 (3d Cir. 2020).) Judge Vazquez further held even though there are "pending unfair labor practice charges before the NLRB, 'the NLRB's primary jurisdiction does not preempt a court's jurisdiction over § 301 actions.'" (ECF No. 21 at 6–7 (quoting *Mack Trucks, Inc. v. Int'l Union, UAW*, 856 F.2d 579, 585 (3d Cir. 1988).)

On December 9, 2021, the Honorable Andre M. Espinosa, U.S.M.J. entered a text order granting Local 25's request for an extension of time to file an answer. (ECF No. 21.) On December 20, 2021, Local 25 filed an Answer asserting six separate defenses and a Counterclaim. (ECF No. 29.) The Counterclaim sought judgment declaring Trematore: (1) has been bound to Local 25's collective bargaining agreement for the period of June 1, 2018 through May 31, 2021; (2) is presently bound to Local 25's collective bargaining agreement for the period of June 1, 2021 through May 31, 2024; (3) improperly repudiated the collective bargaining agreement with Local

25; (4) improperly withdrew its § 9(a) recognition of Local 25; and (5) is obligated to continue to bargain with and otherwise recognize and respect Local 25's § 9(a) status.[14] (ECF No. 29.)

On January 14, 2022, Trematore filed an Amended Verified Complaint which sought a judgment declaring: (1) Local 25 is enjoined from processing any grievances and proceeding to arbitration directed at Trematore; (2) Local 25 is enjoined from demanding negotiation with Trematore for a successor collective bargaining agreement; (3) Local 25 is no longer a recognized exclusive bargaining representative for an employee of Trematore; and (4) Trematore is not subject to the 2015/2018 CBA and any subsequent successor collective bargaining agreements. (ECF No. 32.) On the same date, Trematore filed an Answer to Local 25's Counterclaim. (ECF No. 33.) On February 4, 2022, Local 25 filed an Answer to the Amended Verified Complaint again asserting six separate defenses. (ECF No. 36.)

On October 28, 2022, the parties filed a joint letter request for trial on a stipulated record (ECF No. 50) and provided a Joint Statement of Undisputed Facts (ECF No. 50-1) as well as a Master List of Exhibits (ECF No. 50-2). In the letter, the parties stated they sought "to file cross-motions based on [the] stipulated record for a determination as to which party is entitled to what relief as set forth in the pleadings." (ECF No. 50 at 2.) The parties noted "[w]e understand from Judge Espinosa that he has discussed our proposition with you [Judge Vazquez] and that you [Judge Vazquez] expressed a willingness to consider it." (*Id.*) Based on the Joint Statement of Undisputed Facts, the parties also stated the court should decide the cross-motions "as if it had heard live testimony, including the drawing of reasonable inferences from the stipulated record." (*Id.*) On November 1, 2022, Judge Vazquez granted the parties' request to file the cross-motions.

---

[14] Section 9(a) of the NLRA is entitled "Exclusive Representatives; Employees' Adjustment of Grievances Directly with Employer" and provides for the recognition of a union as the exclusive representation of employees for the purposes of collective bargaining. 29 U.S.C. § 159(a).

(ECF No. 51.) On March 21, 2023, the parties filed an Amended Joint Statement of Undisputed Facts (ECF No. 58-1) and an Amended Master List of Exhibits (ECF No. 58-2).

On May 16, 2023, Trematore filed a Motion for Judgment on the Pleadings and Local 25 filed a Cross-Motion for Judgment on the Pleadings.[15] (ECF Nos. 61, 62.) On June 2, 2023, Trematore withdrew its previously filed brief, and filed an Amended Brief in Support of its Motion for Judgment on the Pleadings.[16] (ECF No. 67-1.) On June 16, 2023, Trematore filed an opposition to Local 25's Cross-Motion for Judgment on the Pleadings. (ECF No. 68.) On June 17, 2023, Local 25 filed an opposition to Trematore's Motion for Judgment on the Pleadings. (ECF No. 69.) On July 5, 2023, Local 25 filed a reply in further support of its Cross-Motion for Judgment on the Pleadings. (ECF No. 70.) On the same date, Trematore filed a reply in further support of its Motion for Judgment on the Pleadings. (ECF No. 71.) On September 14, 2023, the case was reassigned to the undersigned. (ECF No. 72.)

On January 11, 2024, Local 25 filed a sur-reply letter brief permitted by the Court under Local Civil Rule 7.1(d)(6). (ECF No. 73.) Local 25 attached the NLRB Decision to the sur-reply. (ECF No. 73-1.) Local 25 did not submit further substantive arguments but noted Judge Chu's Opinion "thoroughly discusses and then rejects all of Trematore's contentions regarding its claimed right to renounce its collective bargaining agreement and its duty to collectively bargain

---

[15] On May 20, 2023, Trematore filed a letter requesting Judge Vazquez to consider its overlength, sixty-eight (68) page brief submitted in support of the Motion for Judgment on the Pleadings pursuant to Local Civil Rule 7.2(b). (ECF No. 63.) On May 22, 2023, Local 25 filed an opposition to Trematore's "belated application" to file an overlength brief arguing "Trematore's 68 page brief should be stricken and it should be required to file a substitute brief of 40 pages or less under a very short deadline so as not to require an extension of the current briefing schedule for these cross-motions." (ECF No. 65 at 1–3.) On May 25, 2023, Judge Vazquez entered a Letter Order granting Trematore's request to submit an overlength brief. (ECF No. 66.)

[16] Local 25 did not object to Trematore's Amended Brief. (ECF No. 67 at 2.)

with Local 25." (ECF No. 73 at 2.) On January 12, 2024, the Court issued a Text Order which gave Trematore until January 19, 2024 to respond and limited Trematore's response to five pages. (ECF No. 74.) Additionally, the Court ordered "[n]o further submissions will be considered by the Court." (*Id.*) On January 18, 2024, Trematore filed a letter brief in further opposition to Local 25's sur-reply and cross-motion. (ECF No. 75.) Trematore argued the NLRB Decision "is neither a significant development, nor related to the law of this litigation."[17] (*Id.* at 1.) Trematore asserted that the NLRB Decision is insignificant because Judge Chu "did not address any of the issues which [Trematore] has presented to this Court" (*id.* at 2) and that the Court has jurisdiction over this matter therefore it should not consider the NLRB Decision (*id.* at 3–4).

## II.   LEGAL STANDARD[18]

It is well-established the Declaratory Judgment Act gives courts discretion to determine "whether and when to entertain [such] an action." *Wilton v. Seven Falls*, 515 U.S. 277, 282 (1995);

---

[17] The Court reviewed the NLRB decision for the sole purpose of determining whether any of the parties' requested relief was moot. *See infra* Section III.A. Pursuant to § 301, the Court does have jurisdiction to determine whether: (1) the One-Employee Unit Rule applies; (2) a valid collective bargaining agreement currently exists between the parties; and (3) whether the Felician University Grievance is arbitrable. *See id.* Therefore, the Court agrees with Trematore and finds this Opinion and the Court's analysis is predominantly unaffected by the NLRB Decision.

[18] The parties noted: their "request [to file motions for judgment on a stipulated record] differs from one seeking leave to file cross-motions for summary judgments"; and "there is no federal rule on point" for a motion for judgment on a stipulated record. (ECF No. 50 at 2.) The parties have not specified nor argued the standard of review which should be applied to the pending motions. The Court's research has revealed that motions for judgment on a written/stipulated record are rare in both the District of New Jersey and the Third Circuit. Motions for judgment on a stipulated record are most common in the District of Maine and the First Circuit. The First Circuit has held "[i]n a case submitted for judgment on a stipulated record, the district court resolves disputed issues of material fact." *Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 31 (1st Cir. 2000) (citing *Boston Five Cents Sav. Bank v. Sec'y of the Dep't of Hous. & Urban Dev.*, 768 F.2d 5, 11–12 (1st Cir. 1985). In applying this principle for the purposes of "rendering judgment," the District of Maine "makes findings of fact on any disputed factual issues in accordance with Federal Rule of Civil Procedure 52." *Casey v. Town of Yarmouth*, 514 F. Supp. 3d 306, 310 (D. Me. 2021) (citing *OneBeacon Am. Ins. Co. v. Johnny's Selected Seeds Inc.*, Civ.

*see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (explaining the Declaratory

Judgment Act "has long been understood to confer on federal courts unique and substantial

discretion in deciding whether to declare the rights of litigants") (internal quotation marks

omitted); *Pub. Affairs Assocs. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment

Act was an authorization, not a command."). As the Supreme Court has stated:

> The Declaratory Judgment Act provides that a court "*may declare
> the rights and other legal relations of any interested party,*" 28
> U.S.C. § 2201(a) (emphasis added), not that it must do so. This text
> has long been understood "to confer on federal courts unique and
> substantial discretion in deciding whether to declare the rights of
> litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *see
> also Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95,
> n.17 (1993); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491,
> 494–496 (1942). We have found it "more consistent with the
> statute," however, "to vest district courts with discretion in the first
> instance, because facts bearing on the usefulness of the declaratory
> judgment remedy, and the fitness of the case for resolution, are
> peculiarly within their grasp." *Wilton*, *supra*, at 289.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). Determination as to whether to

exercise this discretion is guided by the Court's sense of "practicality and wise judicial

administration," *Wilton*, 515 U.S. at 287–88, and numerous other factors such as:

> whether it would finally settle the controversy between the parties;
> whether other remedies are available or other proceedings pending;
> the convenience of the parties; the equity of the conduct of the
> declaratory judgment plaintiff; prevention of 'procedural fencing';
> the state of the record; the degree of adverseness between the parties;
> and the public importance of the question to be decided.

*Hanes Corp. v. Millard*, 531 F.2d 585, 591 n.4 (D.C. Cir. 1976), *overruled on other grounds by*

*Nat'l R.R. Passenger Corp. v. Consol. Rail Corp.*, 892 F.2d 1066, 1072 (D.C. Cir. 1990).

---

A. No. 12-00375, 2014 WL 1569517, at * 1 (D. Me. April 17, 2014)). The Court notes there are
no material fact disputes at issue; instead, both Local 25 and Tremature seek a declaratory
judgment. Therefore, the Court relies as needed on the Declaratory Judgment Act and the resultant
caselaw.

### III.    DECISION

#### A.    Jurisdiction

The parties provide substantial briefing relitigating the issue of the Court's jurisdiction. Judge Vazquez's November 17, 2021 Opinion and Order denied Local 25's Amended Motion to Dismiss and found subject matter jurisdiction existed "to determine the existence of a collective bargaining agreement." (ECF No. 21 at 4 (quoting *Util. Workers*, 838 F. App'x at 688).) Local 25 has "[a]ccept[ed] that ruling" and acknowledges the Court has jurisdiction to determine whether there is a valid collective bargaining agreement binding the parties but disputes the Court's jurisdiction over other issues. (ECF No. 62 at 2.)

Trematore contends the Court has jurisdiction over the entire litigation. (*See*, *e.g.*, ECF No. 67-1 at 30–31 (arguing the Court has jurisdiction pursuant to § 301 of the NLRA, 29 U.S.C. § 185 and 28 U.S.C. § 2201 because the Amended Verified Complaint seeks a judgment declaring Trematore no longer has a valid collective bargaining agreement with Local 25); ECF No. 68 at 3–4 (asserting "if this Court decides that there is no valid CBA between the Parties, then there are no issues remaining for the NLRB to decide, precisely because [the NLRB] Complaint is all based on the <u>assumption</u> that there is a valid CBA" (emphasis in original)); ECF No. 71 at 3–4 (reiterating the Court has jurisdiction over the entire litigation because the issue before the Court is whether there is an enforceable collective bargaining agreement).)

To the contrary, Local 25 asserts the only other issue the Court has jurisdiction to determine is whether the Felician University Grievance is arbitrable. (*See*, *e.g.*, ECF No. 62-1 at 2 (contending "whichever way the [collective bargaining dispute] is resolved, this Court should defer the resolution of whether Trematore committed unfair labor practice charges by improperly renouncing its bargaining obligation to the NLRB"); ECF No. 69 at 5–7 (arguing the Court has

jurisdiction to declare whether the Felician University Grievance is arbitrable under § 301 of the NLRA, 29 U.S.C. § 185, but all other issues must be deferred to the NLRB (citing *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771 (2023)[19]; and then citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582−83 (1960)); ECF No. 69 at 7 (asserting the Court "should decide Local 25's *Counterclaim* insofar as it seeks Declarations that Tremore is bound to its CBA and that its *Felician University Grievance* is arbitrable and dismiss Tremore's *Amended Complaint* and every other issue in this case, including Tremore's Act-based defenses to the *Counterclaim*" (emphasis in original)); ECF No. 70 at 9 (submitting Article X, Section 8 of the 2015/2018 CBA requires the parties to engage in interest arbitration concerning the Felician University Grievance); *id.* at 12–13 (asserting application of the One-Employee Unit Rule[20] is a question of representation within the jurisdiction of the NLRB).)

The Court finds Tremore's defenses to the Counterclaim addressed later in this Opinion, including the One-Employee Unit Rule, are within the Court's jurisdiction. The Court agrees with Tremore and finds Local 25's reliance on Justice Jackson's dissent in *Glacier*, 598 U.S. at 794, 796–97 (Jackson, J., dissenting), is misplaced. In *Glacier*, the United States Supreme Court held the NLRA did not protect the defendant union's actions because the defendant union "took affirmative steps to endanger [the plaintiff employer]'s property rather than reasonable precautions to mitigate that risk." 598 U.S. at 785 (7-1 decision). The majority opinion did not address the

---

[19] Tremore contends Local 25's reliance on Justice Jackson's dissent in *Glacier*, 598 U.S. at 794, 796–97 (Jackson, J., dissenting), is misguided because Judge Vazquez has already addressed the merits of preemption and the protection of the NLRA. (ECF No. 71 at 3–4.)

[20] *See infra* Section III.B.

issue of *Garmon* preemption[21] in the context of the NLRB's complaint against the plaintiff employer because the NLRB complaint had been issued while the matter was pending before the United States Supreme Court. *Id.* at 784 n.3.

In the dissenting opinion, Justice Jackson concluded the filing of the NLRB complaint "necessarily suffices to establish that the Union's strike is 'arguably protected' within the meaning of *Garmon*. Thus, the [NLRB] complaint should have marked the end of any court involvement in this matter at this time." *Id.* at 796. Justice Jackson further noted the NLRB complaint alleged the plaintiff employer restricted "conduct protected by § 7 when it disciplined its drivers for walking off the job and when it filed this tort suit. . . . [o]ne 'cannot credibly contend that a claim that makes it through this gauntlet does not concern conduct 'arguably' protected by the NLRA.'" *Id.* at 796–97.

The Court recognizes Justice Jackson's concern with the majority opinion in *Glacier*. Indeed, as Justice Jackson forewarned, the Supreme Court's ruling in *Glacier* "is likely to cause considerable confusion among the lower courts about what *Garmon* requires." *Id.* at 814. Here, the NLRB Region 22 Complaint alleges Trematore "has been failing and refusing to bargain collectively and in good faith with the exclusive-bargaining representative of [Trematore]'s employees within the meaning of Section 8(d) of the [NLRA] in violation of Section 8(a)(1) and (5) of the NLRA." (Ex. KK, NLRB Region 22 Complaint (ECF No. 58-6 at 107–18).) Applying

---

[21] The doctrine known as *Garmon* preemption provides "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). Section 7 of the NLRA protects an employee's "right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8 of the NLRA prohibits an employer from engaging in "unfair labor practice[s]," including the interference of employees' exercise of their § 7 rights. 29 U.S.C. § 158(a).

the reasoning from Justice Jackson's dissent in *Glacier* would result in this Court deferring to the NLRB.

Tremore's main argument and defense—as to why the 2015/2018 CBA is no longer valid as of this date—is dependent on the One-Employee Unit Rule. If the Court were to hold Tremore's conduct in repudiating the 2015/2018 CBA pursuant to the One-Employee Unit Rule is preempted by the NLRA because of the allegations in the NLRB Region 22 Complaint, in accordance with Justice Jackson's dissent in *Glacier*, the Court would be effectively stripped of its jurisdiction to determine the validity of the collective bargaining agreements at issue. Judge Vazquez previously held: § 301 of the NLRA,[22] 29 U.S.C. § 185, conferred subject matter jurisdiction to this Court (ECF No. 21 at 4 (citing *Util. Workers*, 838 F. App'x at 688)); and "the NLRB's primary jurisdiction does not preempt a court's jurisdiction over § 301 actions." (ECF No. 21 at 6–7 (quoting *Mack Trucks*, 856 F.2d at 585)). The Court finds Local 25 has not identified a basis to disturb Judge Vazquez's prior ruling.[23]

Therefore, the Court finds it has subject matter jurisdiction pursuant to § 301 to determine whether: (1) the One-Employee Unit Rule applies; and (2) a valid collective bargaining agreement currently exists between the parties. *See*, *e.g.*, *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653,

---

[22] Section 301(a) provides federal district courts with subject matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . ." 29 U.S.C. § 185(a).

[23] Justice Jackson's dissenting opinion in *Glacier*, which notably no other Supreme Court Justices signed onto, is Local 25's primary support for its argument that Tremore's defenses to the Counterclaim are not within the Court's jurisdiction. In finding no basis to disturb Judge Vazquez's prior ruling, the Court is guided by the law of the case doctrine which provides "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Am. Civil Liberties Union v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).

658 (1998) (finding "if, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with § 301(a), adjudicate that defense"); *Stanker & Galetto, Inc. v. N.J. Reg'l Council of Carpenters of United Bhd. of Carpenters & Joiners of Am.*, Civ. A. No. 12-5447, 2013 WL 4596947, at *2 (D.N.J. Aug. 28, 2013) (holding § 301 "encompasses actions" where a plaintiff seeks a declaratory judgment providing the collective-bargaining agreement is invalid); *Mack Trucks*, 856 F.2d at 590 ("The NLRB's primary jurisdiction does not preempt a court's jurisdiction over § 301 actions, even if the matter is arguably subject to § 7 or § 8 of the NLRA.").

The parties agree the Court has jurisdiction to declare whether the Felician University Grievance is arbitrable pursuant to § 301 of the NLRA. (*See* ECF No. 69 at 7; ECF No. 71 at 5.) Accordingly, the Court will address the arbitrability of the Felician University Grievance below.

However, the Court finds it does not have subject matter jurisdiction to consider the remaining issues which have been adjudicated in the NLRB Decision, may be before the NLRB at a later juncture, and/or implicate the NLRA. Trematore argues "if this Court decides that there is no valid CBA between the Parties, then there are no issues remaining for the NLRB to decide, precisely because [the NLRB] Complaint is all based on the <u>assumption</u> that there is a valid CBA." (ECF No. 68 at 3–4 (emphasis in original).) Trematore further submits "[w]orst case, Plaintiff would have to file what would be an unbeatable Motion to Dismiss the NLRB [Region 22] Complaint to the Administrative Law Judge." (*Id.* at 4.) These arguments are not persuasive. Further, these arguments are moot because of Judge Chu's holdings in the NLRB Decision.[24]

---

[24] *See infra* Section I.A.7.

"Courts should not decide questions beyond their jurisdiction under the guise of construing contracts under Section 301." *West Point-Pepperell, Inc. v. Textile Workers Union*, 559 F.2d 304, 306 (5th Cir. 1977). "[W]hile district courts have concurrent authority over collective bargaining disputes between unions and employers, the federal courts must recognize the primary jurisdiction of the National Labor Relations Board over disputes concerning employees' right to organize." *DHSC, LLC v. Cal. Nurses Ass'n*, 700 F. App'x 466, 470–71 (6th Cir 2017) (citing *Garmon*, 359 U.S. at 244–45). "[F]ederal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Garmon*, 359 U.S. at 245.

The Court finds it does not have subject matter jurisdiction to enter judgment declaring: (1) Local 25 is enjoined from processing any grievances and proceeding to arbitration directed at Trematore; and (2) Local 25 is enjoined from demanding negotiation with Trematore for a successor collective bargaining agreement. (ECF No. 32.) These questions are beyond the Court's jurisdiction under § 301. Therefore, the Court concludes it cannot grant this portion of Trematore's requested relief.

### B.   Validity of the Collective Bargaining Agreements

In support of the Motion for Judgment on a Stipulated Record, Trematore asserts the 2015/2018 CBA was the only binding collective bargaining agreement between the parties. (*See generally* ECF Nos. 67-1, 68, 71.) Trematore raises multiple arguments in support of its position. (*See*, *e.g.*, ECF No. 67-1 at 43–46, 51–53 (arguing the One-Employee Unit Rule was the only means for Trematore to terminate the 2015/2018 CBA)[25]; *id*. at 47–48 (asserting an "impasse" was

---

[25] Trematore acknowledges the One-Employee Unit Rule has only been applied to § 8(f) collective bargaining agreements but contends the rationale and justifications for the One-Employee Unit Rule are also applicable in the context of § 9(a) collective bargaining agreements. (*Id.* at 54–57.)

created by the parties' failure to agree to a successor collective bargaining agreement)[26]; *id*. at 58–63 (submitting it did not demonstrate its intent to be bound by the 2018/2021 CBA, but instead took overt actions to repudiate the 2018/2021 CBA).)

In opposition, Local 25 contends the binding nature of the collective bargaining agreements at issue as well as the Evergreen Provision are not against public policy. (ECF No. 69 at 9–10.) In reply, Trematore argues it is not contrary to public policy to allow an employer to repudiate a collective bargaining agreement under the One-Employee Unit Rule. (ECF No. 71 at 1–2.) Trematore also asserts its argument is not that the binding provisions of the collective bargaining agreements including the Evergreen Provision are unenforceable but rather that the One-Employee Unit Rule is the sole mechanism for Trematore to terminate the 2015/2018 CBA. (*Id.* at 6–8.)

In support of its Cross-Motion for Judgment on a Stipulated Record, Local 25 submits it is entitled to a declaratory judgment providing that it has at all relevant times had a valid and binding collective bargaining agreement with Trematore. (ECF No. 62-1 at 3–6.) Because Trematore signed the 2015/2018 CBA, which covered the period of June 1, 2015 to May 31, 2018, on May 23, 2018, Local 25 asserts "[t]he parties obviously expected their newly-formalized relationship to last more than eight days." (*Id.* at 3.) Additionally, Local 25 cites to the Evergreen Provision and argues the 2015/2018 CBA fully executed on May 23, 2018 remains in effect today because Trematore did not undertake the necessary steps required to terminate it. (*Id.* at 3–5.) Local 25 states Trematore "abided by all of the terms of its CBA when it directly employed Local 25 journeymen during the period of June 1, 2018 through September 9, 2018, including by paying

---

[26] Impasse, in the context of collective bargaining agreements, is described as the "point at which there is a sufficient disagreement over a mandatory subject of bargaining to permit unilateral action by of the parties on that subject." *Latrobe Steel Co. v. NLRB*, 630 F.2d 171, 179 (3rd Cir. 1980) (internal citations omitted).

them the increased wages and benefits that had been negotiated into Local 25's successor agreements with its other employers." (*Id.* at 4.) Local 25 also contends Trematore's acknowledgement of its contractual relationship with Local 25 during the Vassar Grievance is further proof of a valid and binding collective bargaining agreement with Trematore. (*Id.* at 4–5.) In reliance upon *Enright Seeding, Inc.*, 371 N.L.R.B. 127 (2022), Local 25 argues Trematore's repudiations of the collective bargaining relationship between the parties were unlawful in the § 9(a) context therefore the Evergreen Provision is still binding and Trematore has a valid collective bargaining agreement with Local 25. (*Id.* at 9–11.)

In opposition, Trematore reiterates it has met the requirements of the One-Employee Unit Rule by actions taken after September 9, 2018 to repudiate the collective bargaining relationship with Local 25. (ECF No. 68 at 4–5.) Trematore argues Local 25's reliance on *Enright Seeding Inc.*, is misplaced because Trematore noted in its underlying brief that the One-Employee Unit Rule has only been applied in the context of a § 8(f) collective bargaining relationship. [27] (*Id.* at 8–9.)

In reply, Local 25 argues neither contract law nor the NLRA permits mid-term renunciation or repudiation of the collective bargaining agreements. (ECF No. 70 at 1–4.) Local 25 asserts Trematore cannot renounce its contractual obligations because Trematore voluntarily signed the 2015/2018 CBA. (*Id.* at 5–12.)

### 1.    The One-Employee Unit Rule

The One-Employee Unit Rule provides:

> if an employer employs one or fewer unit employees on a permanent
> basis that the employer, without violating Section 8(a)(5) of the Act,

---

[27] The Court is not persuaded by Local 25's reference to *Enright Seeding, Inc.*, 371 N.L.R.B. 127 (2022). In *Enright Seeding, Inc.*, the NLRB addressed whether a collective bargaining agreement between a plaintiff employer and defendant union was governed by § 8(f) or § 9(a). *Id.* Therefore, *Enright Seeding, Inc.* is not particularly relevant to the Court's analysis of whether the One-Employee Unit Rule could be applied to a § 9(a) collective bargaining agreement.

> may withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment without affording a union an opportunity to bargain.

*J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, Loc. Union 1*, 398 F.3d 967, 973 (7th Cir. 2005) (quoting *Stack Elec., Inc.*, 290 N.L.R.B. 575, 577 (1988)). "[T]he principle of collective bargaining presupposes that there is more than one eligible person who desires to bargain. The [NLRA] therefore does not empower the [NLRB] to certify a one-man unit." *Foreign Car Ctr., Inc.*, 129 N.L.R.B. 319, 320 (1960). In *J.W. Peters*, the Seventh Circuit held "as a matter of common sense, it seems illogical to bind [the plaintiff employer] to a pre-hire agreement because it has no employees who could reject the [defendant] [u]nion as their bargaining representative in a [NLRB]-conducted election." 398 F.3d at 975.

The One-Employee Unit Rule permits employers to "lawfully repudiate" a collective bargaining agreement with a defendant union after only a few months of maintaining a one- or zero-employee unit. *Stanker & Galetto, Inc.*, 2013 WL 4596947, at *2. The Third Circuit has not explicitly addressed the applicability of the One-Employee Unit Rule in § 301 actions, but the Sixth Circuit, Seventh Circuit, and Ninth Circuit have applied the One-Employee Unit Rule and held an employer may repudiate a § 8(f) collective bargaining agreement. *See, e.g.*, *Baker Concrete*, 820 F.3d at 828–32 (in "a case of first impression," applying the One-Employee Unit Rule and finding a plaintiff employer lawfully repudiated a collective bargaining agreement when the plaintiff employer had "not hired any employees under the [collective bargaining agreement] for several years"); *J.W. Peters*, 398 F.3d, at 975 (holding repudiation permitted when plaintiff employer had no members in the relevant unit for one year); *Westlake*, 53 F.3d at 998 (holding repudiation lawfully permitted under the One-Employee Unit Rule when no employees in unit for three years).

24

##### 2. Applicability of the One-Employee Unit Rule to Section 9(a) Agreements

As Trematore acknowledges, the One-Employee Unit Rule has only been applied in the context of § 8(f) collective bargaining agreements. (ECF No. 67-1 at 54–57; ECF No. 68 at 8–9.) It is undisputed the 2015/2018 CBA recognized Local 25's exclusive jurisdiction, pursuant to § 9(a) of the NLRA, 29 U.S.C. § 159(a), over all construction sites at which Trematore would be performing sheet metal work both inside and outside of Local 25's geographic jurisdiction. (ECF No. 58-1 ¶ 52.)

Section 8(f) of the NLRA permits "pre-hire" collective bargaining agreements between an employer and a union. *See* 29 U.S.C. § 158(f). "A pre-hire agreement is a contract agreed to by an employer and a union *before* the workers to be covered by the contract have been hired." *Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers, Local 3 v. NLRB*, 843 F.2d 770, 773 (3d Cir. 1988) (citing Roberts' Dictionary of Industrial Relations, 562 (3rd ed. 1986)). "Ordinarily, such agreements are illegal because they purport to tie employees to a majority representative— i.e., labor union—without the majority of the employees' selecting and ratifying which organization they wish to represent their interests." *Baker Concrete*, 820 F.3d at 832. Nevertheless, pre-hire agreements are permitted in the construction industry "because general contractors and other employers in the construction industry do not hire and keep employees and subcontractors on the same permanent basis as other employers do, it is necessary for these employers to have more flexibility in their bargaining contracts and union relations." *Id.* The Third Circuit has stated "[b]ecause the union enjoys no presumption of majority status, either party in a § 8(f) relationship is free to unilaterally withdraw and 'avoid any obligation to bargain for a successor contract' upon the expiration of the collective bargaining agreement." *Sheet Metal Workers' Int'l Ass'n Loc. 19*

*v. Herre Bros., Inc.*, 201 F.3d 231, 239 (3d Cir. 1999) (quoting *James Luterbach Constr. Co.*, 315 N.L.R.B. 976, 979 (1994)).

In contrast, § 9(a) collective bargaining agreements materialize only after a majority of the employees in a unit have "designated or selected" the union as a representative for the employees. 29 U.S.C. § 159(a). Section 9(a) provides, in pertinent part, "[r]epresentatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining." *Id*. Employers that have recognized a union's exclusive jurisdiction, pursuant to § 9(a) of the NLRA, "ha[ve] an obligation to negotiate a successor contract with the union in good faith." *Herre Bros.,* 201 F.3d at 239 (citing *Luterbach*, 315 N.L.R.B. at 979).

Against this backdrop, the Court does not find any basis to apply the One-Employee Unit Rule to the § 9(a) collective bargaining agreements at issue. The Court acknowledges the potentially intoxicating and sympathetic facts of the case. Since September 9, 2018, Trematore has not employed any sheet metal workers who are members of Local 25. (ECF No. 58-1 ¶ 69.) Additionally, Trematore contends it has not performed any Air HVAC work covered by the collective bargaining relationship with Local 25 since September 9, 2018. (ECF No. 67-1 at 56.) In both 2019 and 2021, Trematore indisputably disavowed its collective bargaining relationship with Local 25. (ECF No. 58-1 ¶¶ 71, 139). In both instances, Trematore advised Local 25 it no longer intends to perform sheet metal work within Local 25's work jurisdiction. (*Id*.) However, the Court concludes the stipulated facts are not sufficiently persuasive to circumvent the relevant caselaw.

Although the Sixth Circuit, Seventh Circuit, and the Ninth Circuit[28] have not addressed the applicability of the One-Employee Unit Rule to § 9(a) collective bargaining agreements, the Ninth Circuit has stated the One-Employee Unit Rule allows an employer to unilaterally repudiate a collective bargaining agreement "in the unique circumstance[s]" of a § 8(f) collective bargaining agreement. *See MacKillop v. Lowe's Mkt., Inc.*, 58 F.3d 1441, 1446 (9th Cir. 1995) ("*Westlake* holds that, in the unique circumstance of a section 8(f) pre-hire collective bargaining agreement, an employer's unilateral repudiation of such agreement under the one-employee unit rule renders the agreement void, and the obligation to the [Employee Retirement Income Security Act of 1974] benefit plan also ceases upon repudiation." (citing *Westlake*, 53 F.3d at 984)). The Sixth Circuit has stated the One-Employee Unit Rule "is a narrow rule that has been articulated and applied by the NLRB in cases involving CBAs under NLRA § 8(f)." *Baker Concrete*, 820 F.3d at 830. Further, the NLRB has recognized the One-Employee Unit Rule in the context of 8(f) agreements. *See* B*uilding Contractors Assn., Inc.,* 364 NLRB 930, 931 n.8 (2016) ("With respect to 8(f) agreements, an employer who employs one or fewer unit employees on a permanent basis is free to withdraw recognition, repudiate its contract, or unilaterally change terms and conditions of employment without affording an opportunity to bargain." (internal citation omitted)).

District courts have held the One-Employee Unit Rule does not apply in the context of a § 9(a) collective bargaining agreement. *See, e.g.*, *Bd. of Trs. Of Plumbers v. R. & T. Schneider Plumbing Co.*, Civ. A. No. 13-858, 2015 WL 4191297, at *12 (S.D. Ohio July 10, 2015) (stating "the existence of a Section 8(f) pre-hire agreement is a prerequisite to the application of the one-employee unit rule"); *Bd. of Trs. of IBEW Local Union No. 100 Pension Tr. Fund v. Power Design Electric, Inc.*, Civ. A. No. 17-01483, 2019 WL 4274093, at *11 (E.D. Cal. Sept. 10, 2019) (holding

---

[28] *See infra* Section III.B.1.

"the one-employee-unit rule does not extend to § 9(a) CBAs to allow unilateral repudiation by the employer of obligations owed under the CBAs").[29]

Based on the foregoing, the Court holds the One-Employee Unit Rule may not be applied by Trematore as a proper basis basis for repudiation of the fully executed 2015/2018 CBA which recognized Local 25's exclusive jurisdiction, pursuant to § 9(a) of the NLRA. "[N]either an employer nor a union governed by § 9(a) may unilaterally withdraw from the multiemployer bargaining unit or the collective bargaining agreement; instead, withdrawal is subject to specific requirements." *Herre Bros.,* 201 F.3d at 239 (citing *Retail Assocs., Inc.,* 120 N.L.R.B. 388, 393– 95 (1958)). The Court notes Trematore did not undertake any of the steps required by Article XVII, Section 1 to terminate the 2015/2018 CBA, 2018/2021 CBA, or the 2021/2024 CBA.[30] (ECF 58-1 ¶¶ 58–62.) Both the 2015/2018 CBA and the 2018/2021 CBA contain provisions which unequivocally waived Trematore's right to repudiate the collective bargaining agreements during their term, or during the term of any extension, modification, or amendment. (*Id.* ¶ 63.) Trematore has not met the requirements to unilaterally repudiate its collective bargaining relationship with

---

[29] In both *Schneider*, 2015 WL 4191297, at *10, and *Power Design Electric*, 2019 WL 4274093, at *6, the defendant employers raised the One-Employee Unit Rule as a defense to the plaintiffs' claims that the defendant employers breached the subject collective bargaining agreements by failing to provide monthly reports and remit benefit contributions. Here, Local 25 does not mention Trematore's failure to provide monthly reports and remit benefit contributions; instead, Trematore raises the One-Employee Unit Rule in support of its argument that the collective bargaining relationship between the parties should be invalidated. (ECF No. 62-2 at 2.) The Court finds this distinction is irrelevant to its determination of whether the One-Employee Unit Rule should be applied to a § 9(a) collective bargaining agreement.

[30] Trematore's assertion that it was not bound by the 2018/2021 CBA is borderline nonsensical. Trematore executed the 2015/2018 CBA on May 23, 2018, a mere eight days prior to the expiration of the 2015/2018 CBA on May 31, 2018. (ECF No. 58-1 ¶¶ 45–46.) Additionally, Trematore: (1) continued to directly employ Local 25 sheet metal workers until September 9, 2018 (*id.* ¶ 67); and (2) abided by the wage and benefit increases of the 2018/2021 CBA, which were above those provided by the 2015/2018 CBA (*id.* ¶ 68).

Local 25. Further, in applying the factors annunciated in *Hanes Corp*., the Court concludes this ruling helps to "settle the controversy between the parties" which certainly has risen to a level of "adverseness" and is equitable given "the conduct of the declaratory judgment plaintiff." 531 F.2d at 591 n.4. Pursuant to the Evergreen Provision, the Court therefore finds Trematore is and has been bound to valid collective bargaining agreements with Local 25 since the 2015/2018 CBA was executed on May 23, 2018.

### C.     Arbitrability of the Felician University Grievance

Local 25 asserts the Felician University Grievance is arbitrable. (ECF No. 69 at 8 (citing *Int'l Union of Bricklayers & Allied Craftworkers, Loc. 5 v. Banta Tile & Marble Co.*, 344 F. App'x 770, 772 (3d Cir. 2009).) Local 25 also submits Article X, Section 8 of the 2015/2018 CBA and 2018/2021 CBA requires the parties to engage in interest arbitration concerning the Felician University Grievance. (ECF No. 70 at 9.) In opposition to this assertion, Trematore argues if the Court decides there is no effective bargaining agreement between the parties, then the issue of the arbitrability of the Felician University is moot. (ECF No. 71 at 5.)

"To determine the arbitrability of a dispute a court must address two issues: 1) whether the parties formed an agreement to arbitrate; and 2) whether the dispute in question falls within the scope of that agreement." *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 202 (3d Cir. 2001) (citation omitted). Here, Article X, Section 8 of both the 2015/2018 CBA and the 2018/2021 CBA requires the parties to engage in arbitration in the event of a dispute such as the Felician University Grievance. (ECF No. 58-3 at 157–58, 216–17.) For the reasons set forth above, *supra* Section III.B, the Court has found Trematore is and has been bound to valid collective bargaining agreements with Local 25 since the 2015/2018 CBA was executed on May 23, 2018. The Court notes the Felician University Grievance was served to Trematore on February 16, 2021, during the

term of the 2018/2021 CBA. (ECF No. 58-1 ¶ 129.) Accordingly, the Court finds the Felician University Grievance is arbitrable.

**IV.    CONCLUSION**

For the reasons set forth above, Trematore's Motion for Judgment on a Stipulated Record (ECF No. 61; ECF No. 67-1) is **DENIED** and Local 25's Cross-Motion for Judgment on a Stipulated Record (ECF No. 62) is **GRANTED**. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  January 19, 2024